**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| **CHRIMAR SYSTEMS, INC.,** *et al.,* | |
| **Plaintiffs,** | |
| **v.** | **Case No. 6:15-CV-163- JDL** |
| **ALCATEL-LUCENT USA INC.,** *et al.*, | |
| **Defendants.** | |
| **CHRIMAR SYSTEMS, INC.,** *et al.,* | |
| **Plaintiffs,** | |
| **v.** | **Case No. 6:15-CV-164- JDL** |
| **AMX, LLC,** | |
| **Defendant.** | |

**DEFENDANTS'[1] MOTION FOR PARTIAL SUMMARY JUDGMENT OF INDEFINITENESS**

---

[1] Defendants Alcatel-Lucent USA Inc., Alcatel-Lucent Holdings, Inc., ALE USA Inc., and AMX join in this Motion.

## **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................... 1

II.     STATEMENT OF UNDISPUTED MATERIAL FACTS ................................................ 2

III.    LEGAL STANDARD............................................................................................... 4

IV.     ARGUMENT ......................................................................................................... 5

        A.      The Claim Phrase "At Least One Condition" Renders Certain Claims
                Indefinite. ................................................................................................. 5

        B.      Dependent Claims That Use "Detection Protocol" Are Indefinite. ........................ 7

        C.      Claim 72 Of The '107 Patent Is Also Indefinite Because "DC Current"
                Lacks A Proper Antecedent Basis........................................................................ 10

V.      CONCLUSION...................................................................................................... 11

## **TABLE OF AUTHORITIES**

**Cases**

*Datamize, LLC v. Plumtree Software, Inc.*,
    417 F.3d 1342 (Fed. Cir. 2005)...........................................................................4

*Halliburton Energy Services, Inc. v. M-I LLC*,
    514 F.3d 1244 (Fed. Cir. 2008)......................................................................4, 8

*Interval Licensing LLC v. AOL, Inc. et al.*,
    766 F.3d 1364 (Fed. Cir. 2014)...........................................................................4

*IPXL Holdings, LLC v. Amazon.com, Inc.*,
    430 F.3d 1377 (Fed. Cir. 2005)...........................................................................4

*K-2 Corp. v. Salomon S.A.*,
    191 F.3d 1356 (Fed. Cir. 1999)...........................................................................6

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    134 S. Ct. 2120 (June 2, 2014)..........................................................1, 4, 9, 12

*Nike Inc. v. Wolverine World Wide, Inc.*,
    43 F.3d 644 (Fed. Cir. 1994)...............................................................................7

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)...........................................................................7

*Power Mosfet Technologies, L.L.C. v. Siemens Ag*,
    378 F.3d 1396 (Fed. Cir. 2004)...........................................................................7

## INDEX OF EXHIBITS

Ex. A          Claims of U.S. Patent No. 8,942,107 ("the '107 patent")

Ex. B          Claims of U.S. Patent No. 8,902,760 ("the '760 patent")

Ex. C          Claims of U.S. Patent No. 9,019,838 ("the '838 patent")

Ex. D          '107 patent prosecution history, November 5, 2014 Amendment

Ex. E          Selected excerpts of the January 20, 2016 Deposition Transcript of Chrimar's
               expert, Les Baxter

Ex. F          January 21, 2016 Declaration of Rich Seifert

Ex. G          U.S. Patent No. 8,155,012 ("the '012 patent")

Ex. H          '107 patent prosecution history, May 7, 2014 Final Rejection

Ex. I          December 17, 2015 Declaration of Les Baxter

Ex. J          Selected excerpts of McGraw-Hill Electronics Dictionary

Ex. K          Declaration of Leisa Talbert Peschel Regarding Exhibits to Defendants' Motion
               for Partial Summary Judgment of Indefiniteness

## I.      INTRODUCTION

The patents-in-suit[2] demonstrate how indefiniteness can result from serial patent filings involving hundreds of patent claims more than a decade after an asserted priority date.  The asserted claims in this case use at least two terms—"condition" and "protocol"—that do not appear in the original patent disclosure.  Nor does the remainder of the intrinsic record provide reasonable certainty to one of skill in the art regarding the scope of each term as it is used in the asserted claims.  *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2149 (June 2, 2014) (holding that "reasonable certainty" is the standard for definiteness under 35 U.S.C. § 112).  In addition, dependent claim 72 of the '107 patent lacks antecedent basis for "DC current."  For these reasons, claim 35 of the '012 patent, claims 1, 5, 43, 72, 83, 103, 104, 111, and 123 of the '107 patent, and claim 59 of the '760 patent are invalid for failing to meet the definiteness standard of 35 U.S.C. § 112.[3]  Defendants therefore respectfully request that the Court enter summary judgment that the foregoing claims are invalid.[4]

---

[2] "Patents-in-suit" collectively refers to U.S. Patent Nos. 8,155,012 ("the '012 patent"); 8,942,107 ("the '107 patent"); 9,019,838 ("the '838 patent"); and 8,902,760 ("the '760 patent").

[3] In prior cases between the parties, Case Nos. 6:13-cv-880 (ALU and ALE) and 6:13-cv-881 (AMX), it was Defendants' contention that certain terms from the '012 patent were indefinite.  The parties briefed the indefiniteness issues, and the Court ultimately entered an Order that the terms at issue were not indefinite.  *See* Case No. 6:13-cv-880 at Dkt. No. 102.  Rather than ask the Court to redo its prior work on these terms Defendants have filed a motion requesting that the claim construction briefing and Orders from the earlier cases be incorporated into this case for the purpose of appeal.  *See* Dkt. No. 90.  While Defendants believe its request is the most expedient path forward and the least burdensome on the Court, Chrimar has opposed the motion.  Defendants, therefore, incorporate the parties' briefing on the indefiniteness issues from the prior cases between the parties.  *See* Case No. 6:13-cv-880 at Dkt. Nos. 87, 90, 94, 102; *see also* Case No. 6:13-cv-881 at Dkt. Nos. 90, 94, 98, 102.

[4] Defendants' Motion requests only partial summary judgment because the indefiniteness issues raised herein do not apply to all of the asserted claims.

1

## II.        STATEMENT OF UNDISPUTED MATERIAL FACTS

1.       Chrimar asserts infringement by Defendants of claims 31, 35, 36, 43, 56, and 60 of the '012 patent, claims 1, 5, 43, 72, 83, 103, 104, 111, and 125 of the '107 patent, claims 1, 31, 59, 69, 72, 73, 106, 142, and 145 of the '760 patent, and claims 1, 7, 26, 40, and 69 of the '838 patent.

2.       Independent claim 1 of the '107 patent states (emphasis added): "1.  A piece of Ethernet terminal equipment comprising: an Ethernet connector comprising first and second pairs of contacts used to carry Ethernet communication signals, at least one path for the purpose of drawing ***DC current***, the at least one path coupled across at least one of the contacts of the first pair of contacts and at least one of the contacts of the second pair of contacts, the piece of Ethernet terminal equipment ***to draw different magnitudes of DC current flow*** via the at least one path, ***the different magnitudes of DC current flow*** to result from ***at least one condition applied*** to at least one of the contacts of the first and second pairs of contacts, wherein at least ***one of the magnitudes of the DC current flow*** to convey information about the piece of Ethernet terminal equipment."  Ex. A, '107 pat., cl. 1.

3.       Independent claim 104 of the '107 patent states, in relevant part (emphasis added): "the different magnitudes of DC current flow to result from ***at least one condition applied*** to at least one of the contacts . . . ."  Ex. A, '107 pat., cl. 104.

4.       Independent claim 1 of the '760 patent states, in relevant part (emphasis added): "the piece of central BaseT Ethernet equipment to detect at least two different magnitudes of the current flow through the loop and to control the application of ***at least one electrical condition*** to at least two of the conductors."  Ex. B, '760 pat., cl. 1.

2

5.      Independent claim 1 of the '838 patent states, in relevant part (emphasis added): "the central piece of network equipment . . . ***to control application of at least one electrical condition*** to at least one of the contacts . . . ." Ex. C, '838 pat., cl. 1.

6.      Asserted dependent claims do not further limit the "condition" required by asserted independent claims 1 and 104 of the '107 patent.

7.      "Condition" is not used in the specification of the patents-in-suit except for in the Abstract of the '107 patent, which was added by the patentee in an amendment dated November 5, 2014—more than a decade after Chrimar's asserted priority date. *See* Ex. D, Nov. 5, 2014 Am. at CMS050134.

8.      The parties agree that the "condition applied" language used in independent claims 1 and 104 of the '107 patent is functional language. *See, e.g.*, Ex. E, Baxter Dep. at 255:25–256:4; Ex. F, Seifert Decl. ¶ 133.

9.      "Protocol" is not used in the specification of the patents-in-suit.

10.     Claim 72 of the '107 patent states (emphasis added): "72.  The piece of Ethernet terminal equipment of claim 1 wherein at least one magnitude of the ***DC current*** is ***part of a detection protocol***." Ex. A, '107 pat., cl. 72.

11.     Claim 35 of the '012 patent states (emphasis added): "35.  The piece of Ethernet data terminal equipment according to claim 31 wherein the impedance within the at least one path is ***part of a detection protocol***." Ex. G, '012 pat., cl. 35.

12.     Claim 59 of the '760 patent states (emphasis added): "The BaseT Ethernet system of claim 1 wherein at least one of the different magnitudes of current flow through the loop is ***part of a detection protocol***." Ex. B, '760 pat., cl. 59.

3

13.     During prosecution of the '107 patent and in response to a final rejection, the patentee added the word "flow" in what issued as claim 1 of the '107 patent.  Ex. D, Nov. 5, 2014 Am. at CMS051034–35; *see also* Ex. H, May 7, 2014 Final Rejection at CMS050985.

## III.   LEGAL STANDARD

Indefiniteness is a question of law for the Court to decide as part of its duty to construe the claims and is a matter appropriate for disposition on summary judgment.  *IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377, 1380 (Fed. Cir. 2005).  A claim is indefinite if, when viewed in light of the intrinsic record, it fails to "inform those skilled in the art about the scope of the invention with reasonable certainty."  *Nautilus,* 134 S. Ct. at 2149.  The Federal Circuit has since applied *Nautilus* to hold that, to be definite, "the claims, when read in light of the specification and the prosecution history, must provide objective boundaries for those of skill in the art."  *Interval Licensing LLC v. AOL, Inc. et al.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014).  In other words, there must be "some standard for measuring the scope of the phrase" and where a claim limitation "depends on the unpredictable vagaries of any one person's opinion," it is indefinite.  *Id*. at 1370–71 (quoting *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350 (Fed. Cir. 2005)).  Claims are indefinite where the term at issue is "completely dependent on a person's subjective opinion" and where "a term does not have proper antecedent basis where such basis is not otherwise present by implication or the meaning is not reasonably ascertainable."  *Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008).

## IV.    ARGUMENT

### A.    The Claim Phrase "At Least One Condition" Renders Certain Claims Indefinite.

Asserted independent claims 1 and 104 of the '107 patent fail to meet the definiteness requirement of 35 U.S.C. § 112 and are therefore invalid.  One of ordinary skill in the art cannot discern with reasonable certainty the scope of the claim phrase "at least one condition" used in these claims because the intrinsic record is devoid of guidance regarding the objective bounds of "condition."  Likewise, asserted dependent claims 5, 43, 72, 83, 103, 111, and 123 of the '107 patent are indefinite because they depend from an invalid claim and do not further limit the scope of "condition."

All of the asserted claims of the '107 patent contain a limitation requiring "to draw different magnitudes of DC current flow via the at least one path, the different magnitudes of DC current flow to result from at least one condition applied to at least one of the contacts of the first and second pairs of contacts."  *See, e.g.*, Ex. A, '107 pat., cl. 1.  This language raises the question: how does one of ordinary skill evaluate what one can and cannot do to the first and second pairs of contacts to yield different magnitudes of current?  In other words, the claim language requires that one understand the bounds of the term "at least one condition."

Objective boundaries for the scope of "condition" are not readily discernible from the intrinsic record.  The original specification common to the patents-in-suit does not use the word "condition."  Indeed, it was not until November 5, 2014 (more than 10 years after the earliest filing date of the original specification) that the abstract of the '107 patent eventually was amended to add the term "condition."  *See* Ex. D, Nov. 5, 2014 Am. at CMS051034.  The prosecution history also fails to provide any clues to ascertain objective confines as to

condition's meaning other than it was required in order to gain allowance of the claims.  *See id.* at CMS051035, CMS051054, CMS051059 (adding "condition" to claim 72 (issued claim 1) and claim 183 (issued claim 104)).

Dependent claims of the patents-in-suit do place additional limitations of what constitutes a "condition," thereby indicating that "condition" is not limited to a:

- voltage condition (e.g., '107 pat., cl. 22);
- current condition (e.g., '012 pat., cl. 85);
- electrical condition (e.g., '107 pat., cl. 61);
- impedance condition (e.g., '107 pat., cl. 23);
- blocking condition (e.g., '838 pat., cl. 46);
- open circuit condition (e.g., '760 pat., cl. 4); or
- DC signal (e.g., '760 pat., cl. 53).

Presumably, the claim term "condition," standing alone, connotes something broader than what is recited in the dependent claims.  However, with no assistance provided by the patent specification or the prosecution history, there is no way for one of ordinary skill to determine with any reasonable precision the scope of the claims that contain the phrase "at least one condition."  *See also* Ex. F, Seifert Decl. ¶¶ 133–140 (discussing why one of ordinary skill in the art would not know what "condition" encompasses).

Perhaps recognizing that "condition" is boundless, Chrimar's expert, Mr. Baxter, equates "condition" with "electrical condition."  Mr. Baxter incorrectly asserts that "[i]n the context of these claims, the plain and ordinary meaning of the term "condition" is an electrical condition (e.g., a voltage or an impedance condition)."  Ex. I, Baxter Decl. ¶ 45; *see also* Ex. E, Baxter Dep. at 216:19–217:7 and 219:7–14.  With this interpretation, Chrimar and its expert ask the Court to commit legal error and rewrite the claims to limit "condition" to an "*electrical* condition."  *See K-2 Corp. v. Salomon S.A.,* 191 F.3d 1356, 1362 (Fed. Cir. 1999) ("Court's do

not rewrite claims; instead, we give effect to the terms chosen by the patentee."); *see also Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 647 (Fed. Cir. 1994) (rejecting the patentee's proposed claim construction that would, "in effect, rewrite its patent claims to suit its needs in this litigation.").

Chrimar's narrowing interpretation of "condition" is also improper because it ignores dependent claims, such as claims 61 and 80 of the '107 patent, that expressly use the term "electrical condition."  Further, use of "electrical condition" in independent claim 1 of the '760 and '838 patents also counsels against Chrimar's improper attempt to rewrite claims that use the term "condition" standing alone.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (explaining that the term "steel baffles" strongly implies that the term "baffles" does not inherently mean objects made of steel); *see also Power Mosfet Technologies, L.L.C. v. Siemens Ag,* 378 F.3d 1396, 1410 (Fed. Cir. 2004) (interpretations that render some portion of the claim language superfluous are disfavored).  Where the patentee intended to claim an "electrical condition," he did.  As used in the asserted claims of the '107 patent, "condition" lacks objective boundaries and those claims are therefore indefinite.  *See* Ex. F, Seifert Declaration ¶¶ 133–140.

## B.     Dependent Claims That Use "Detection Protocol" Are Indefinite.

Dependent claim 35 of the '012 patent recites that "impedance within the path is part of a detection protocol," claim 72 of the '107 patent recites that "at least one magnitude of DC current is part of a detection protocol," and claim 59 of the '760 patent recites that "at least one of the different magnitudes of current flow through the loop is part of a detection protocol." These "detection protocol" claims are indefinite because there is no objective boundary as to what constitutes a "detection protocol," and the patents provide no assistance in understanding the scope of the terms.  The common specification of the patents-in-suit does not use the term

7

"protocol."   The patents-in-suit also fail to provide any guidance as to what constitutes a "detection protocol," what "magnitude[s] of DC current" are relevant, and what is required for current flowing in a circuit to be considered "part of a detection protocol."   *See e.g.*, Ex. A, '107 pat., cl. 59.

The claims recite that the numerical value of an impedance or current is part of the claimed "detection protocol," but this determination is entirely dependent on the whims of unspecified individuals or organizations.   *See* Ex. F, Seifert Decl. ¶¶141-146.   In other words, a determination of whether a measured impedance or current (as those terms are used in the patents-in-suit) is arbitrarily ascribed some meaning within a "detection protocol" is entirely subjective and undefined by the patents-in-suit.   Further, what is or is not a "detection protocol" is also subjective and without any perceivable boundary, and thus, the claims in which this term is used are indefinite. *See Interval Licensing*, 766 F.3d at 1371; *Halliburton,* 514 F.3d at 1249.

Chrimar's supporting extrinsic evidence confirms the indefiniteness of the "detection protocol" claims.   For example, Chrimar's expert witness has opined that "protocol" means a "procedure, scheme, or set of rules."  Ex. I, Baxter Decl. ¶73.[5]   However, in attempting to apply the plain meaning of "protocol" to the claims, Mr. Baxter comes up with three separate interpretations for "detection protocol":

- "a detection scheme, rule, or procedure" (Baxter Decl. ¶70);
- "a procedure, scheme, or set of rules for detecting, discovering, or determining the existence of something" (Baxter Decl. ¶73); and
- "that the equipment is configured or designed so that the magnitude of the current (flow) or the impedance in the path allow it to detect or determine some information about the equipment at the other end of the path" (Baxter Decl. ¶74).

---

[5] Chrimar's expert witness appears to generally agree with the definition of the McGraw-Hill Electronics Dictionary that defines "protocol" as "a set of conventions for the transfer of information between computer devices."  Ex. J, McGraw-Hill Elecs. Dictionary at Chrimar_DefsII0004724.

These varying interpretations highlight the amorphous nature of "detection protocol."

Mr. Baxter's deposition testimony also highlights the subjectivity underlying "detection protocol."  Chrimar's expert witness acknowledged that a person of ordinary skill in the art would have no knowledge of the IEEE[6] Power over Ethernet standard accused of infringement as of the alleged date of invention.  Ex. E, Baxter Dep. at 237:20-238:4. Mr. Baxter had no answer, however, for when the accused IEEE standard met his definition for a "detection protocol" or how anyone could read the specification of the patents and understand how to avoid the "detection protocol" claims in the later developed IEEE standard. *Id.* at 239:8-14, 240:21-241:21, 232:25-233:12.  Significantly, Mr. Baxter could not provide any delineation between what does and does not constitute a detection protocol other than to say ""[i]f it uses the techniques taught in this patent to, to do what I say . . . in Paragraph 74, then in my opinion it would [be a detection protocol]" and it would not be a detection protocol if using techniques that are not in the patent. Ex. E, Baxter Dep. at 250:15–251:14.  In fact, when presented with a hypothetical, Mr. Baxter deferred to the "judge and jury" on whether a person working independently in his garage at home, as opposed to the IEEE, published what he believes to be a detection protocol, if this activity would be encompassed by the "detection protocol" claims.  *See* Ex. E, Baxter Dep. at 249:22-250:13.  Mr. Baxter's inability to delineate between what does and does not constitute a "detection protocol" demonstrates that the scope of the term cannot be ascertained with reasonable certainty.

For these reasons, the "detection protocol" claims are indefinite.  *See Nautilus,* 134 S. Ct. at 2149.

---

[6] "IEEE" stands for Institute of Electrical and Electronics Engineers and is a standards organization.

**C.     Claim 72 Of The '107 Patent Is Also Indefinite Because "DC Current" Lacks A Proper Antecedent Basis.**

Claim 1 of the '107 patent (numbered as pending claim 72 during prosecution) was amended during prosecution to separately recite "DC current" and "DC current flow" as shown below.

> 72.   (Currently amended)   ~~An   identifiable~~  A  piece  of  Ethernet  terminal equipment comprising:
>
> an Ethernet connector comprising first and second pairs of contacts used to carry Ethernet communication signals, at least one path for the purpose of drawing DC current, the at least one path coupled across at least one of the contacts of the first pair of contacts and at least one of the contacts of the second pair of contacts, the piece of Ethernet terminal equipment to draw different magnitudes of DC current flow via the at least one path, the different magnitudes of DC current flow to result from at least one condition applied to at least one of the contacts of the first and second pairs of contacts, wherein at least one of the magnitudes of the DC current flow to convey ~~comprises~~ information ~~to identify~~ about the piece of Ethernet terminal equipment ~~as a particular piece of Ethernet terminal equipment~~.
>
> 149.   (Currently amended)   The  ~~identifiable~~  piece  of  Ethernet  terminal equipment of claim 72 wherein [[a]]at least one magnitude of the DC current is part of a detection protocol.

Ex. D, Nov. 5, 2014 Am. at CMS051035, CMS051048 (emphasis added).  In claim 1 (pending claim 72), the phrase "for the purpose of drawing DC current" applies to "at least one path;" while the phrase "different magnitudes of DC current flow to result from a condition applied" is recited as part of the functions performed by the claimed "Ethernet terminal equipment."  Claim 72 (pending claim 149, shown above), however, was amended to associate "magnitude" with "DC current," not "DC current *flow*."

The antecedent basis problem with issued claims 1 and 72 cannot be reconciled.  Claim 72 recites a "magnitude of <u>DC current</u>."  Ex. A, '107 pat., cl. 72.  "Magnitude" is neither claimed nor relevant to "at least one path for the purpose of drawing DC current."  *Id.* at cl. 1.  "At least one path for the purpose of drawing DC current" describes a structure for drawing current, not any actions involving "current flow."  *Id.*  Further, current "flow" is not implied in claim 72.  <u>DC current flow</u> in claim 1 is required to "result from a condition applied to the contacts."  *Id.*  Claim 72's requirement that "at least one magnitude of DC current is part of a detection protocol" does not expressly or implicitly require "a condition applied" to the contacts. There is no way to clearly discern the meaning of this claim.

Chrimar's expert erroneously attempts to eliminate this indefiniteness issue by construing "current" and "current flow" as equivalent claim terms.   Ex. I, Baxter Decl. ¶¶ 55–56.[7] "Current" and "current flow" cannot have the same meaning in claim 1 of the '107 patent.  The patentee explicitly used two different terms in the same claim with different meanings.  *See* Ex. A, '107 pat., cl. 1.  Further, the patentee purposely added "flow" to what issued as claim 1 during prosecution of the '107 patent in response to a final rejection.  Ex. D, Nov. 5, 2014 Am. at CMS051034–35; *see also* Ex. H, May 7, 2014 Final Rejection at CMS050985.  The lack of a clear antecedent basis renders claim 72 of the '107 patent indefinite.

## V.    CONCLUSION

For the reasons stated herein, and as a matter of law, asserted claims 1, 5, 43, 72, 83, 103, 104, 111, and 123 of the '107 patent are invalid under 35 U.S.C. § 112 as indefinite because one

---

[7] In their P.R. 4-2 disclosures, Chrimar agreed with Defendants that "current" and "current flow" had different meanings.  However, once alerted to the indefiniteness issues for dependent claims that recite "DC current," Chrimar changed positions and now argues the terms should be construed to have the same meaning.

11

of ordinary skill in the art could not understand the scope of the claim phrase "at least one condition" with reasonable certainty. *Nautilus,* 134 S. Ct. at 2149. Likewise, asserted claim 35 of the '012 patent, claim 72 of the '107 patent, and claim 59 of the '760 patent are invalid for use of the indefinite claim term "detection protocol." Claim 72 of the '107 patent is also indefinite for lack of a clear antecedent basis for the claim term "DC current." Defendants therefore respectfully request that the Court enter summary judgment that the foregoing claims are invalid as indefinite. A proposed order is attached.

Date: February 11, 2016

Respectfully submitted,

*/s/ Danny L. Williams*
Danny L. Williams—LEAD ATTORNEY
State Bar No. 21518050
Email: danny@wmalaw.com
Chris N. Cravey
State Bar No. 24034398
Email: cravey@wmalaw.com
Matthew R. Rodgers
State Bar No. 24041802
Email: mrodgers@wmalaw.com
David K. Wooten
State Bar No. 24033477
Email: dwooten@wmalaw.com
Leisa Talbert Peschel
State Bar No. 24060414
Email: lpeschel@wmalaw.com
**WILLIAMS MORGAN, P.C.**
710 North Post Oak Road, Suite 350
Houston, Texas 77024
Telephone: (713) 934-7000
Facsimile: (713) 934-7011

*Attorneys for Defendants-Counterclaimants
Alcatel-Lucent USA Inc., Alcatel-Lucent
Holdings, Inc., and ALE USA INC.*

12

Michael E. Jones
State Bar No. 10929400
Email: mikejones@potterminton.com
**POTTER MINTON, P.C.**
110 North College, Suite 500
Tyler, Texas 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

*Attorneys for Defendants-Counterclaimants
Alcatel-Lucent USA Inc. and Alcatel-Lucent
Holdings, Inc.*

Date: February 11, 2016                    Respectfully submitted,

/s/ *Brent A. Hawkins*
_____

Brent A. Hawkins
David H. Bluestone
**McDERMOTT WILL & EMERY LLP**
227 West Monroe Street
Chicago, IL 60606-5096
Telephone:  (312) 372-2000
Facsimile:  (312) 984-7700
Email:  bhawkins@mwe.com
Email:  dbluestone@mwe.com

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
Allen Gardner
State Bar No. 24043679
allengardner@potterminton.com
**POTTER MINTON, P.C.**
110 North College, Suite 500
Tyler, Texas 75702
Telephone:  (903) 597-8311
Facsimile:  (903) 593-0846

*Attorneys for Defendant
AMX*

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the all counsel of record who are deemed to have consented to electronic service are being served on February 11, 2016 with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

*/s/ Donna E. Ward*
Litigation Paralegal