IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| CHRIMAR SYSTEMS, INC., CHRIMAR HOLDING COMPANY, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> ALCATEL-LUCENT ENTERPRISE USA INC., <br><br> Defendant. | § § § § § § § § § § § § § CIVIL ACTION NO. 6:15-CV-00163-JDL |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant ALE USA Inc.'s ("ALE") Motion to Modify Final Judgment (Doc. No. 451). Plaintiffs Chrimar Systems, Inc. and Chrimar Holding Company, LLC ("Chrimar") filed a response (Doc. No. 452), to which ALE filed a reply (Doc. No. 454), and Chrimar filed a sur-reply (Doc. No. 456). For the reasons stated herein, ALE's Motion (Doc. No. 451) is **DENIED**.

**BACKGROUND**

On March 9, 2015, Plaintiffs Chrimar filed the instant action against ALE, alleging infringement of U.S. Patent Nos. 8,115,012 ("the '012 Patent"), 8,902,760 ("the '760 Patent"), 8,942,107 ("the '107 Patent"), and 9,019,838 ("the '838 Patent") ("patents-in-suit")). (Doc. No. 3.) On October 7, 2016 the trial of this matter concluded and the jury returned a verdict as follows: (1) Claims 31, 35, 43, and 60 of the '012 Patent were not invalid; Claims 1, 5, 72, and 103 of the '107 Patent were not invalid; Claims 1, 59, 69, 72, and 145 of the '760 Patent were not invalid, and Claims 1, 7, and 26 of the '838 Patent were not invalid; (2) the sum of money

1

that would fairly and reasonably compensate Chrimar for ALE's infringement was $324,558.34; (3) ALE did not prove by a preponderance of the evidence that Chrimar committed fraud against ALE; and (4) ALE did not prove by a preponderance of the evidence that Chrimar breached a contract with the IEEE. (Doc. No. 349.) Both Chrimar and ALE moved to renew motions for judgment as a matter of law pursuant to Rule 50(b). The Court denied the motions for judgment as a matter of law on January 24, 2017. (Doc. No. 414.) Thereafter, on February 27, 2017, the Court entered the parties' agreed final judgment submitted in accordance with the Court's post trial rulings. (Doc. No. 423.) ALE filed a notice of appeal on March 28, 2017. (Doc. No. 438.)

Relatedly, during this time, Chrimar was involved in active litigation with one of ALE's suppliers of the accused products, Accton Technology Corporation ("Accton"). (Case No. 6:15-cv-616.) On January 15, 2017, Chrimar filed a joint motion to stay deadlines, indicating it had reached a settlement with Accton. (6:15-cv-616, Doc. No. 40.) On January 24, 2017, ALE wrote its first email to Chrimar requesting that Chrimar produce the Accton settlement agreement. (Doc. No. 454-4m at 6–7.) Chrimar produced the term sheet for the settlement with Accton on January 26, 2017, but did not produce the settlement agreement. (Doc. No. 452-1.) The settlement agreement was signed on March 2, 2017. (Doc. No. 451-1.) On June 7, 2017, ALE emailed Chrimar asking that Chrimar produce the settlement agreement. (Doc. No. 454-4, at 3.) Chrimar then produced the Accton settlement agreement on June 8, 2017. (Doc. No. 545-4, at 2.) Thereafter, on June 30, 2017, ALE filed the instant motion to modify the final judgment contending that Chrimar exhausted certain rights when it licensed Accton.

**DISCUSSION**

ALE moves to modify the final judgment in this matter to exclude damages and ongoing royalties that are based upon Accton-supplied Power over Ethernet ("PoE") devices to ALE

pursuant to Federal Rule of Civil Procedure 60(b). (Doc. No. 451, at 4.) Specifically, ALE contends that the doctrine of patent exhaustion warrants the modification because Chrimar licensed Accton and its customers (including ALE) to the patents-in-suit. *Id.* Chrimar argues that ALE agreed to the final judgment after it knew about the Accton license and now brings this motion just to gain leverage for mediation. (Doc. No. 452, at 3.) Moreover, Chrimar argues that the doctrine of patent exhaustion does not apply because under the license agreement, products sold to ALE are "Unlicensed Products." *Id.*

### A. Rule 60(b) and Waiver

As an initial matter, ALE brings this motion pursuant to Fed.R.Civ.P. 60(b), but does not indicate the specific provision of 60(b) upon which it is relying to obtain relief from the Court. Indeed, several of the provisions of Rule 60(b) are inapplicable. Federal Rule of Civil Procedure 60(b) provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

While ALE does not specify, presumably it moves under 60(b)(6) as the remainder of the subsections in (1)–(5) do not apply to the current situation. Indeed, final judgment in this matter was entered on February 27, 2017 (Doc. No. 424), and the Accton license agreement was finalized just a few days later on March 2, 2017 (Doc. No. 451-1). While ALE did not have the finalized agreement before the time for a Rule 59 motion, ALE was indisputably aware of the license during that time as it had the material term sheet since January 26, 2017 (Doc. No. 452-1).[1] Thus, the prudent course of action would have been to notify the Court of the issue as soon as practicable—certainly prior to the Court entering a purported agreed final judgment that did not raise this issue. Therefore, the Court will apply the standards of Rule 60(b)(6) to the instant motion.

Rule 60(b)(6) empowers federal courts with broad authority to relieve a party from a final judgment. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988). A party seeking 60(b)(6) relief "must file the motion within a 'reasonable time,' which depends upon the particular facts and circumstances of the case. *Travelers Ins. Co. v. Liljeberg Enterprises, Inc.*, 38 F.3d 1404, 1410 (5th Cir. 1994) (citing *Liljeberg*, 486 U.S. at 863; *First RepublicBank Fort Worth v. Norglass, Inc.*, 958 F.2d 117, 119 (5th Cir.1992); *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir.1981) ("What constitutes 'reasonable time' depends on the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties").) Only

---

[1] Further, Chrimar filed a joint motion to dismiss Accton in the Accton case on March 3, 2017—the day after the license agreement was finalized. (6:15-cv-616, Doc. No. 42.) This was within the period when ALE could have brought a Rule 59 motion and was a public filing. At that time, ALE could have pressed Chrimar to produce the finalized agreement (which it did not do until June 7, 2017), or filed a motion to compel with the Court.

"extraordinary circumstances" justify 60(b)(6) relief. *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005).

While ALE should have provided earlier notice to the Court of this issue, ALE did timely and persistently seek out the settlement agreement. Similarly, while ALE would have been prudent in moving to compel Chrimar to produce the settlement agreement during the 3 months from the time of its execution to ALE's receipt of the agreement, ALE's position was certainly impacted by the Supreme Court's issuance of *Impression Products* on May 30, 2017. It was promptly thereafter that ALE procured the production of the finalized settlement agreement. For these reasons, it would be unduly harsh to find waiver or that the instant motion is untimely. Therefore, the Court will address the motion on the merits.

### B. Patent Exhaustion

As discussed above, ALE seeks to modify the final judgment because ALE contends that Chrimar exhausted its rights when it licensed ALE's supplier of PoE products, Accton. "The longstanding doctrine of patent exhaustion provides that the initial authorized sale of a patented item terminates all patent rights to that item." *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 625 (2008). Recently, in *Impression Products*, the Supreme Court revisited the doctrine of patent exhaustion. 137 S. Ct. 1523 (2017).

In *Impression Products*, Lexmark brought a patent infringement suit against Impression Products, a remanufacturer, for refilling and reselling Lexmark toner cartridges. *Id.* at 1529. Toner cartridges were obtained either through: (1) the full price program, where the cartridges were sold brand new; or (2) through the "Return Program" where returned cartridges were returned and resold. *Id.* Both options came with a contingency that the cartridges may not be refilled and resold. *Id.* Additionally, Lexmark brought suit based on Lexmark cartridges

imported into the United States. *Id.* The Court found that Lexmark's patent rights were exhausted when the cartridges were originally sold and therefore Lexmark could not impose any post sale restrictions. *Id*. Indeed, the Court's holding was clear—"patent exhaustion is uniform and automatic… [o]nce a patentee decides to sell—whether on its own or through a licensee—that sale exhausts its patent rights, regardless of any post-sale restrictions the patentee purports to impose, either directly or through a license." *Id.* at 1535. Further, the Court held that a sale abroad can indeed exhaust a patent right. *Id.* at 1536–38.

With respect to license agreements, the Supreme Court was clear in that, for exhaustion purposes, it does not matter whether the patentee chooses to license or chooses to make the sale itself because the licensee's sale is treated as if the patentee made the sale itself. *Impression Prods.*, 137 S. Ct. at 1535 (a licensee's authorized "sale is treated, for purposes of patent exhaustion, as if the patentee made the sale itself."). Thus, while Chrimar is correct in that the facts of *Impression Products* are different because Lexmark itself made the sales, that distinction is without a difference. Further, the Supreme Court made it clear that a license may impose restrictions on a licensee, but any post-sale restrictions are not enforceable through patent law. *Id.* at 1535–36.

Here, the parties dispute whether Chrimar exhausted certain rights in the patents-in-suit when it licensed those patents to Accton, a PoE supplier of ALE. The bulk of the parties' disputes revolve around specific provisions of the license agreement to Accton. Specifically, the two provisions that the parties dispute are: (1) §1.10, the provision that grants Accton the right to "make[], use[], offer[] to sell, or sell[], *within the United States* or import[] into the *United States*" (emphasis added); and (2) §1.11 that defines Accton sales to a company currently involved in litigation with Chrimar as "Unlicensed Products". (Doc. No. 451-1.)

6

Looking to § 1.11 of the license agreement, Chrimar and Accton clearly agreed to except certain products from the license agreement, specifically those products that Accton would sell to companies currently in litigation with Chrimar. Section 1.11 states as follows:

> **"Unlicensed Products"** shall mean any and all apparatuses, processes, products, computer programs, methods, services, activities, devices, and combinations of the foregoing that are not Licensed Accton Products, whether or not combined with one or more Licensed Accton Products. Subcomponent parts (such as by way of non-limiting example, Ethernet connectors, energy storage devices, circuit components, surface mount or plug-in modules (e.g., DIMM), chipsets or controllers and/or IC's) are Unlicensed Products. In addition, *PoE Devices that Accton sells to a Licensee of Chrimar or a company currently in litigation with Chrimar are Unlicensed Products under this Agreement, even if such PoE Devices otherwise meet the definition above for Licensed Accton Products*. An approximate list of Chrimar's licensees and companies currently in litigation with Chirmar is attached hereto as Exhibit D.

(Doc. No. 451-1, at 4) (emphasis added).

Indeed, in Exhibit D of the license agreement, ALE is set forth as one of those companies currently in litigation with Chrimar. *Id.* at 19. ALE asks that the Court find that Chrimar exhausted its rights when Accton sold PoE products to ALE; therefore, ALE asks the Court to remit damages and preclude the ongoing royalties as to ALE for Accton-supplied products. But Accton's sales to ALE are not authorized sales because the license agreement with Accton specifically defines any sales of PoE devices by Accton to a customer in active litigation with Chrimar (such as ALE) as *unlicensed*. In other words, this is not a post-sale restriction, as was the case in *Impression Products*, but rather a sale that exceeded the scope of the license agreement and was therefore not authorized. In fact, this very concept was confirmed in *Impression Products* when distinguishing and reaffirming the Court's decision in *General Talking*. See *Impression Prods.*, 137 S. Ct. at 1535 ("*General Talking Pictures*, then, stands for the modest principle that, if a patentee has not given authority for a licensee to make a sale, that sale cannot exhaust the patentee's rights.").

7

This principle makes sense because in negotiating the license agreement, Accton agreed to pay a sum to Chrimar for the sale of licensed products, which it knew did not include products it sold to customers in active litigation with Chrimar. Thus, the amount of payment reflects an agreed sum of money for Accton's sale of PoE products covered by the patents-in-suit that it was either directly selling in the United States (or importing), or that it was selling to customers not involved in active litigation with Chrimar. Given this agreement, with respect to the Unlicensed Products, Chrimar would have to seek recovery on those Accton-supplied products from the customers in active litigation who sell or import products that are covered by the patents-in-suit.

Because Accton was not authorized to sell PoE devices to ALE pursuant to the express terms of the license agreement, the Court finds that those sales did not exhaust Chrimar's patent rights. *Quanta Computer*, 128 S. Ct. at 2112 ("Exhaustion is triggered only by a sale authorized by the patent holder.").[2] Therefore, because Chrimar did not exhaust its rights with respect to PoE products sold by Accton to ALE, the Court finds no basis to modify the final judgment. Accordingly, ALE's Motion (Doc. No. 451) is **DENIED**.

## CONCLUSION

For the reasons set forth herein, ALE's Motion to Modify (Doc. No. 451) is **DENIED.**[3]

---

[2] Because the Court finds Accton sales of PoE devices to ALE to be unauthorized sales, the Court need not further consider the territoriality clause of the license agreement.

[3] Chrimar has made a request for fees for the presentation of this motion. Although Chrimar has prevailed on the motion, the Court does not find such an award to be warranted under the circumstances.

**So ORDERED and SIGNED this 26th day of July, 2017.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE